JAMES J. GARVEY, EXECUTOR, ETC., APPELLANT, v. JAMES McDEVITT, TRUSTEE, ETC., APPELLANT, MARGERY FLYNN AND OTHERS, RESPONDENTS.

*Trusts and powers in trust — Illegal suspension of the power of alienation.*

A testator by his will directed that his executors should, at the expiration of four years after his decease, sell all his real estate and pay over the proceeds thereof to his residuary legatee, and that during said time his executors should invest the same and accumulate the net income thereof for the benefit of the same person. *Held,*

That the trusts were invalid as suspending the power of alienation for a longer period than that allowed by law.

That as they illegally suspended the power of alienation they could not be sustained as powers in trust,

APPEAL from a judgment rendered at the Kings county Special Term. The action was brought by an executor to obtain a construction of a will, the material portion of which appears in the opinion of the court.

*Jesse Johnson* and *Abraham Lott*, for the appellant McDevitt.

*S. P. Nash* and *T. B. Hewitt*, for the executor.

*Chauncey Shaffer*, *Abel Cook*, *G. H. Badeau* and *John B. Haskin*, for the respondents.

BRADY, J. :

This case was sent to us from the second judicial district, the two judges presiding at the General Term, when the appeal was heard there, differing radically upon the questions involved. Many

propositions arising upon the provisions of the will were elaborately argued, so that the revelations made by the case should receive consideration in each aspect in which they presented themselves. In the view, however, which is taken of the controversy, it becomes necessary to examine but one only, because the determination of that disposes of the appeal. The will itself presents the important question without reference to exterior facts, and the portions of it which demand consideration, and out of which it springs, are as follows :

" Fifth. All the rest, residue and remainder of my personal estate, of whatsoever kind and nature, I give and bequeath to the Roman Catholic bishop of the diocese of Raphoe, parish of Rye, county of Donegal, Ireland, in trust, nevertheless, for the purposes as hereinafter mentioned.

" Sixth. I order and direct my executors hereinafter námed, or such of them as shall act, or the survivor of them, at the expiration of four years after my decease, to sell, either at public or private sale, and for the best price they can obtain for the same, all my real estate, howsoever and wheresoever the same may be situated, and to give good and sufficient deed or deeds for the same, and pay over the proceeds arising therefrom, after paying the expenses of the sale thereof and all liens and incumbrances thereon, to the said Roman Catholic bishop of the diocese of Raphoe, parish of Rye, county of Donegal, Ireland, in trust, nevertheless, for the purposes hereinafter mentioned.

" Seventh. I hereby order and direct, and it is my will, that the money bequeathed and ordered to be paid to the said bishop of the diocese of Raphoe, in and by the fifth and sixth items of this, my will, shall be used by him for the following purposes, namely : For the purchase of a site for and the erection and maintaining of a school-house thereon for the benefit of the Roman Catholic children of the parish of Rye, said school to be erected and built in the parish of Rye, county of Donegal, Ireland, to have and to hold the same to said bishop and his successors forever.

" Eighth. It is my will, and I hereby direct, that said school, to be erected and maintained under the provisions of the foregoing items of this, my will, shall be under the control and management of twelve respectable farmers of .the parish of Rye and the said bishop of the

diocese of Raphoe; said farmers to be appointed by said bishop, and are to receive no remuneration for their services.

"Ninth. It is my will and desire that the said school shall be named and called ' The Dougherty American Institute.'

"Tenth. I order and direct that, until my real estate is sold as hereinbefore directed, my executors, hereinafter named, rent my said real estate, and, after paying all taxes, assessments, water rates, insurance and other charges thereon, to deposit the balance of the rent received from said premises in some good savings bank in the city of Brooklyn, and the said money so deposited by them shall form a part of my residuary estate, and be payable with the proceeds of the sale of the real estate as hereinbefore directed."

Three opinions have been written in this case — one by Justice BARNARD, who presided at the Special Term, against the validity of the trust, and one by each of the justices presiding at the General Term, namely, Justices GILBERT and DYKMAN. They all unite in declaring that the trust created by the sixth and tenth clauses is invalid, because it is in conflict with our statute against perpetuities. The power of alienation is suspended by it beyond the period allowed by law. Justice GILBERT, while admitting this, is decidedly of the opinion that it is, nevertheless, valid, as a power in trust, by virtue of the fifty-eighth and fifty-ninth sections of the statute (1 R. S., 729), which provide that where an express trust shall be created for any purpose not enumerated in the preceding sections, no estate shall vest in the trustees, but the trust, if directing or authorizing the performance of any act which may be lawfully performed under a power, shall be valid as a power in trust, and that in every case where the trust shall be valid as a power, the land to which the trust relates shall remain in or descend to the persons otherwise entitled, subject to the execution of the trust. Justice DYKMAN discusses this proposition and rejects it. He thinks that the sections mentioned apply only to cases where express trusts shall be created for any purpose not enumerated in the statute, so that where an express trust has been created, which is enumerated, and is of a kind permitted, their provisions can have no application. And he has further expressed himself: ".It certainly would be a very strange construction of this provision of the statute, to hold that in any case where a testator has impressed his property,

with a trust of a nature and kind permitted by our statutes, but which cannot be carried out as a trust, because it suspends the power of alienation improperly, it may yet be carried out and executed as a power in trust. Under such a construction, a trust which fell under the condemnation of the statute against perpetuities would incur no peril, and that statute would be practically repealed. Such is not, and cannot be, the proper construction of this provision. The legislature provided that express trusts may be created for four purposes, which are clearly defined and enumerated, and abolished all others; but the acts which may be done under a power are not defined, and as it was manifest that express trusts might be created for purposes not enumerated, but which might be lawfully performed under a power, such trusts were made valid as powers and trusts; but they must be such as are not enumerated in the fifty-fifth section." This construction is in full harmony with the case of *Downing* v. *Marshall* (23 N. Y., 366).

These views state the result of an investigation of the subject, and are sustained by authority and by principle. The attempted trust is condemned by the statute. If all the other necessary elements to its success were present, it must fail because of the unlawful suspension of the power of alienation; and when it fails because of its absolute intrinsic invalidity, it fails in all respects. The language of the statute is: "Every future estate shall be void in its creation which shall suspend the power of alienation for a longer period than is prescribed in this title " (1 R. S., 723, § 14); and sections 58 and 59 only preserve trusts which authorize the performance of an act which may lawfully be performed under a power; but under a power no future estate can be lawful which, in its creation, shall suspend the power of alienation. The testator cannot accomplish indirectly what the statute declares he cannot do directly. The source of the power, in other words, must not be in contravention of positive statute law. It must rest on a legal foundation. If a trust prohibited by statute, and therefore void, can be carried out as a power, then, as suggested by Justice DYKMAN, the statute defeats itself. It contains provisions which, in effect, repeal the prohibition, and the design of the enactment is destroyed. So far as the courts have adjudicated upon this question, the rule deducible is, that a trust prohibited because it suspends the power of aliena-

tion is equally invalid as a power in trust. In the case of *Hone's Executors* v. *Van Schaick* (20 Wend., 566), Justice Bronson said : "Every estate is void in its creation, which is so limited that the absolute power of alienation may be suspended for more than two lives in being at the creation of the estate. The lives must be designated, and life must, in some form, enter into the limitation. No absolute term, however short, can be maintained. The testator attempted by means of a trust to receive rents and profits, to render his lands inalienable for a term, of which more than nineteen years remained unexpired at the time of his death. This he could not do. The statute had forbidden it. The whole trust estate, and the remainder limited upon it, are consequently void. (*Coster* v. *Lorillard*, 14 Wend., 265 ; *Hawley* v. *James*, 16 id., 61.) The power in trust to make partition at the end of the term is subject to the same objection as the trust. It works an illegal suspense of the power of alienation. That this may be the effect of a power in trust, and that the power will then be void, has been adjudged by this court in the cases already mentioned." In this case the power in trust works a suspension of the power of alienation because of the four years limitation or condition by which it is governed. (See, also, *Elles* v. *Lynch*, 8 Bosw., 478.) In *Beekman* v. *Bonsor* (23 N. Y., 317), Chief-Justice Comstock thus briefly disposes of a kindred question to the one under discussion : "At the end of the fifteen years, the executors were authorized to sell the land and distribute the proceeds among the nephews and nieces. This would have been a lawful trust or power in trust, if the postponement of its execution for an absolute period of time did not suspend the power of alienation, in a manner which the statute does not permit. That suspension is fatal to this trust, also." The same learned justice, in an elaborate review of the doctrine of powers, said : "And thus, as the old statute of uses, which was intended to abolish positive trusts, left the widest field for the creation of active ones, so our revision in abrogating all active trusts, except the few particularly specified, has reanimated them under the name of powers which are left without restriction, provided the purpose of the limitation or power be itself a lawful one." (*Downing* v. *Marshall*, 23 N. Y., 380.)

The question thus considered seems to be decidedly adverse to the validity of the power in trust, and leads to the conclusion that

the opinion of Justice DYKMAN is entitled to the greater weight, and that the judgment should, therefore, be confirmed. The provisions of the will establishing neither a valid trust nor power in trust, the design of the testator cannot be carried out.

The judgment should be affirmed.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment affirmed.

In the case of *Blanchard* v. *Blanchard* (4 Hun, 287, affirmed in the Court of Appeals, September 25, 1877, no opinion being written), it was held, under a provision giving the use of a farm to the testator's wife and children for seventeen years after his death, and directing his executors, *within two years* after the expiration of that time, to sell the farm and divide the proceeds among certain persons named in the will, that the power vested in the executors being a mere naked power of sale, did not suspend the power of alienation, and was valid. — [REP.